ELLEN FETZER, Adm'r of the Estate of Elva Sloan, a/k/a Dolly Sloan, *et al.*, Plaintiffs-Appellants, v. MICHAEL J. WOOD *et al.*, Defendants-Appellees.

Second District No. 2—90—0433

Opinion filed April 1, 1991.

72

Benson, Mair & Gosselin and Durrenberger & Wechter, P.C., both of Batavia, and Kenneth C. Chessick, of Schaumburg (Lawrence D. Wechter, of counsel), for appellants.

Hollis L. Webster, of Hinshaw & Culbertson, of Lisle, and D. Kendall Griffith, of Hinshaw & Culbertson, of Chicago (Robert G. Black, of counsel), for appellees.

JUSTICE BOWMAN delivered the opinion of the court:

Plaintiffs Ellen Fetzer, as administrator of the estate of the deceased, Elva Sloan, and Richard Hall filed the instant medical malpractice action against defendants, Dr. Michael Wood, Dreyer Medical Clinic, and Mercy Center for Healthcare Services on October 13, 1987. Pursuant to a settlement agreement, defendant Mercy Center was later dismissed as a party to the action. On January 16, 1990, plaintiffs filed their first amended complaint against the remaining two defendants pursuant to the Wrongful Death Act (Ill. Rev. Stat. 1987, ch. 70, pars. 1, 2) and the Survival Act (Ill. Rev. Stat. 1985, ch. 110½, par. 27—6).

According to the complaint, defendant Dr. Wood was negligent in his treatment of the deceased in that he failed to obtain an adequate history from the patient; failed to obtain appropriate consultations with other medical specialists; failed to administer appropriate medication; failed to order necessary tests and procedures; and failed to diagnose and treat the gastric ulcers which ultimately caused the death of Elva Sloan. Defendant Dreyer Medical Clinic was alleged to be negligent in that defendant Dr. Wood was an employee of the clinic, acting within the scope of his employment at all times relevant to the litigation. The complaint further alleged that the negligent acts or omissions of the defendants occurred beginning on March 8, 1986, when defendant Dr. Wood first treated the deceased, and continued until Elva Sloan's death on February 23, 1987.

Prior to trial, defendants filed a motion *in limine* to exclude the testimony of Stanley Smith, plaintiff's economic expert. Defendants argued that Smith's testimony regarding the economic valuation of the deceased's loss of the enjoyment of life and loss of society was not admissible in Illinois. The lower court granted the motion, ruling that Smith's testimony was speculative, intangible and unrecognized in Illinois.

At trial, plaintiffs presented the expert medical testimony of Dr. Arthur Lurvey. Dr. Lurvey's testimony, if believed, tended to establish defendants' negligence. Specifically, Dr. Lurvey opined that defendant Dr. Wood breached the standard of care applicable to a physician when he treated Mrs. Sloan on March 8, 1986, April 4, 1986, and during and after Mrs. Sloan's hospitalization in January 1987. Defendants

presented the expert medical testimony of Dr. Brett Hanauer. Dr. Hanauer's testimony, if believed, tended to establish that defendants were not negligent. Dr. Hanauer testified that, in his opinion, defendant Dr. Wood did not deviate from the standard of care either on March 8, 1986, April 4, 1986, or at any other time during his treatment of the deceased.

A jury instruction conference was held on January 25, 1990, at which time the court approved defendants' instruction No. 31 (Illinois Pattern Jury Instructions, Civil, No. B21.02 (3d ed. 1990)(IPI Civil 3d)), which described the standard under the modified comparative negligence statute. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1116.) Plaintiffs objected, arguing that the causes of action accrued prior to the death of Mrs. Sloan and prior to the enactment of the statute precluding any recovery to plaintiffs deemed to be more than 50% negligent. The lower court ruled that both the Survival Act claim and the Wrongful Death Act claim accrued at the time of death of the deceased and that the instructions were therefore appropriate. The court also refused plaintiffs' instructions which sought to include the loss of the enjoyment of life as part of the definition of pain and suffering. At the close of the jury instruction conference, plaintiffs also made an offer of proof regarding the testimony of their economic expert.

Following trial, the jury answered the special interrogatory, which asked whether or not the contributory negligence of the deceased exceeded 50% of the proximate cause of her injury or damage, in the affirmative. The jury also returned a verdict in favor of the defendants and against the plaintiffs. Plaintiffs' subsequent post-trial motion was denied, and plaintiffs filed their timely notice of appeal.

On appeal, plaintiffs raise the following issues: (1) whether the trial court erred in giving the jury an instruction and a special interrogatory permitting a verdict in favor of defendants if the deceased's contributory negligence exceeded 50% of the proximate cause of her injuries and death; and (2) whether the trial court erred in excluding the testimony of plaintiffs' economic expert regarding the economic valuation of the loss of enjoyment of the decedent's life and the loss of her society. We affirm in part, reverse in part, and remand.

■ Plaintiffs' first contention is that the trial court erred in giving the jury the modified comparative negligence instruction and a related special interrogatory, which precluded any recovery by plaintiffs as to both the Survival Act and Wrongful Death Act claims if the jury found that the deceased's contributory negligence exceeded 50% of the proximate cause of her injuries and death. In Illinois, parties have

the right to have the jury instructed on the issues presented, principles of law to be applied, and the necessary facts to be proved in support of its verdict. (*Leonard v. Pitstick Dairy Lake & Park, Inc.* (1990), 202 Ill. App. 3d 817, 823.) The test is whether, taken as a whole, the instructions are sufficiently clear so as not to mislead and whether they fairly and correctly state the law. (*Korpalski v. Lyman* (1983), 114 Ill. App. 3d 563, 568.) Where an erroneous instruction results in prejudice, reversal for a new trial is required. *Korpalski*, 114 Ill. App. 3d at 568.

The parties agree that resolution of this issue depends upon the date on which plaintiffs' causes of action accrued. If the claims accrued prior to November 25, 1986, the instruction incorporating the "modified" comparative negligence standard was erroneous, and an instruction based on "pure" comparative negligence should have been given. If the claims accrued on or after November 25, 1986, the instruction was proper. Prior to the enactment of the modified comparative negligence statute (Ill. Rev. Stat. 1989, ch. 110, par. 2—1116), Illinois had applied the pure form of comparative negligence. (*Alvis v. Ribar* (1981), 85 Ill. 2d 1, 28.) Under the pure form, the plaintiff's damages were simply reduced by the percentage of fault attributable to him, even if his contributory negligence exceeded 50%. (*Alvis*, 85 Ill. 2d at 25.) On the other hand, as to causes of action accruing on or after November 25, 1986, the modified form applies, and a contributorily negligent plaintiff may recover only so long as the percentage of his fault does not exceed 50% of the total. Ill. Rev. Stat. 1989, ch. 110, par. 2—1116.

Briefly, the arguments of the parties are as follows. Plaintiffs argue that their claims, based on negligence, accrued as early as March 8, 1986, when defendant Dr. Wood first treated, and allegedly misdiagnosed, the deceased. They contend that negligence occurred on that date, resulting in injury to the deceased, and that such negligence continued until the deceased's death on February 23, 1987. Plaintiffs maintain, therefore, that the causes of action accrued prior to the effective date of the modified comparative negligence statute. Defendants argue that the actual injury to the deceased was sustained on February 23, 1987, at the time of her death; that the Survival Act claim did not accrue until after the deceased's death, when plaintiffs first discovered a potential basis for the lawsuit; and that the Wrongful Death Act action could not possibly accrue before the deceased's death. Defendants contend, therefore, that both causes of action accrued after the effective date of the modified comparative negligence statute.

■ We first address plaintiffs' arguments as they relate to the wrongful death claims. Defendants initially argue that plaintiffs' arguments concerning the wrongful death claims are waived, since plaintiffs' notice of appeal seeks review of the jury verdict but not the denial of the post-trial motion. The defendants argue that the only point for review in the record regarding jury instructions is plaintiffs' "singular objection that plaintiff could have filed before November 25, 1986." Defendant argues that this objection goes to the survival action alone, not the wrongful death claims. Defendant correctly points out that a notice of appeal confers jurisdiction upon a reviewing court to consider only the judgment or portion of the judgment specified in the notice. (*Premo v. Falcone* (1990), 197 Ill. App. 3d 625, 628.) The following colloquy was had at the instruction conference.

"THE COURT: The next one is on the 51 percent. B21.02.

MR. WECHTER: Is that defendants' 31?

THE COURT: Yes, it will be given.

MR. WECHTER: For the record, Judge, we wanted to state the objection we made the last time because—

THE COURT: I understand that you say the accruement took place on the survivorship prior to and I'm saying that both causes of action accrued at the time of death.

MR. WECHTER: Right, we're saying that this is an action she could have filed before November 25, of 1986 and then continued after her death and therefore, we shouldn't be denied recovery if she's found to be over 50 percent negligence [*sic*].

THE COURT: And my finding is that both accrued at the time of death. Given over objection, special interrogatory is appropriate. It will be given.

MR. WECHTER: We will object on the same basis. And also that it's already covered in Defendants' No. 31."

Since plaintiffs' attorney's objection was somewhat cut off by the trial judge, and because of the finding as to "both" was "given over objection," and for the sake of clarity on remand, we shall consider plaintiffs' wrongful death arguments on appeal.

While plaintiffs concede that a Wrongful Death Act cause of action does not accrue prior to the death of a deceased, they argue that the same accrual analysis must apply to both the Wrongful Death and Survival Act claims. They argue that where, as here, the claims are based on the same set of facts, to hold otherwise would result in an anomalous situation, unintended by the legislature, in which different verdicts on the two causes of action could result. Defendants, of course, argue that the wrongful death action may only accrue at the

time of death. Both parties refer to *Wyness v. Armstrong World Industries, Inc.* (1989), 131 Ill. 2d 403, in support of their arguments. We agree that *Wyness* is dispositive of this issue.

■ The issue in *Wyness* was whether the two-year filing provision of the Wrongful Death Act was triggered by the "discovery rule" at such time that the cause of action could have accrued prior to the death of an individual when a potential plaintiff seeking recovery under the Act knew or reasonably should have known of a wrongfully caused injury. In answering that question in the negative, our supreme court stated the following:

"The 'injury' which opens the door to initiation of a personal injury suit *** is not the same 'injury' which opens the door to a wrongful death suit. Though both actions require an individual to have been harmed in some way through the actions of another, this injury at the hands of another is not the sole thread which weaves a fabric undergirding both causes of action. A wrongful death action can only be instituted for the benefit of the next of kin who have suffered an 'injury' because a family member has died when that family member's death resulted from an injury wrongfully caused by another. (Ill. Rev. Stat. 1987, ch. 70, pars. 1, 2.) The precipitating 'injury' for the plaintiffs in a wrongful death action, unlike the injury in a personal injury action, is the death; that the death must also be the result of a wrongfully caused injury suffered by the deceased at the hands of another does not alter the analysis. *** This analysis is not against the weight of this court's prior decisions which addressed applicability of the Wrongful Death Act. Implicit in such cases as *Biddy v. Blue Bird Air Service* (1940), 374 Ill. 506, and this court's earlier decision in *Mooney v. City of Chicago* (1909), 239 Ill. 414, 423 (which held that '[i]n suits like this, the cause of action is the wrongful act, neglect or default causing death, and not merely the death itself'), is the fact that not until the death occurred could the court examine whether there was a viable wrongful injury which would permit the case to proceed." *Wyness v. Armstrong World Industries, Inc.* (1989), 131 Ill. 2d 403, 414-15.

■ There are other distinctions as well. As the *Wyness* court noted, while the Survival Act does not create a statutory cause of action, the Wrongful Death Act created a new cause of action for death. (*Wyness*, 131 Ill. 2d at 411, 413.) Moreover, the court stated:

"A survival action allows for recovery of damages for injury sustained by the deceased up to the time of death; a wrongful

death action covers the time after death and addresses the injury suffered by the next of kin due to the loss of the deceased rather than the injuries personally suffered by the deceased prior to death." *Wyness*, 131 Ill. 2d at 410.

See also *Murphy v. Martin Oil Co.* (1974), 56 Ill. 2d 423, 431.

■■ ■ Based on the reasoning set forth in *Wyness*, we find nothing inconsistent or anomalous in finding that, even where the underlying facts are the same, the Wrongful Death and Survival Acts causes of action may accrue at different times. We agree with the trial court that the wrongful death cause of action accrued at the time of death, *i.e.*, after the effective date of the modified comparative negligence statute. As such, the giving of the modified comparative negligence instruction was not erroneous as it applied to the wrongful death claims. We therefore affirm as to that part of the judgment appealed from. Since we find in favor of the defendants on this issue, we need not address plaintiffs' related argument that the trial court erred regarding the admissibility of expert testimony on wrongful death related damages.

■ We turn next to plaintiffs' argument regarding accrual of the Survival Act cause of action. It is well settled that a tort cause of action accrues when all the elements are present: duty, breach, and resulting injury or damage. (*West American Insurance Co. v. Sal E. Lobianco & Son Co.* (1977), 69 Ill. 2d 126, 130.) In a personal injury action arising out of negligence, the cause of action accrues at the time of the injury. (*West American Insurance Co.*, 69 Ill. 2d at 130.) Said another way, a cause of action or right of action accrues when facts exist which authorize the bringing of an action. *Schreiber v. Hackett* (1988), 173 Ill. App. 3d 129, 131.

Here, plaintiffs argue that the deceased suffered pain, and therefore the requisite injury or damage, from defendants' alleged negligence beginning on the date of the alleged misdiagnosis, March 8, 1986, and continuing until her death. Defendants argue that the actual injury did not occur until death due to the bleeding ulcer. Alternatively, defendants argue that if the time of injury was not ascertainable with reasonable certainty, then under the "discovery rule" the cause of action accrued when plaintiffs first knew or reasonably should have known that an injury was wrongfully caused. (See *Withrell v. Weimer* (1981), 85 Ill. 2d 146, 156.) We agree with the plaintiffs.

■ As noted previously, the Survival Act does not create a new cause of action. Rather, it "merely allows a representative of the decedent to maintain those statutory or common law actions which had

already accrued to the deceased *before he died."* (Emphasis added.) (*National Bank v. Norfolk & Western Ry. Co.* (1978), 73 Ill. 2d 160, 172.) It would seem logical that just as a wrongful death claim may not accrue prior to death (*Wyness v. Armstrong World Industries, Inc.* (1989), 131 Ill. 2d 403, 415), by its very nature a Survival Act claim *must* accrue prior to death. The lower court's ruling to the contrary, that the Survival Act cause of action accrued at the time of death, was therefore erroneous.

Defendants then argue that where the time of injury is not readily ascertainable, the only other basis for determining when a cause of action accrues is when it may be "discovered." In medical malpractice actions in which the so-called discovery rule is applied, the cause of action accrues when the plaintiff knows or reasonably should know of an injury and also knows or reasonably should know that it was wrongfully caused. (*Moore v. Jackson Park Hospital* (1983), 95 Ill. 2d 223, 232; *Withrell v. Weimer* (1981), 85 Ill. 2d 146, 156.) Defendants also cite *Moore* for the proposition that "a plaintiff cannot bring an action until he knows or reasonably should know of injury, and that it was caused by the wrongful acts of another." In doing so, defendants completely misrepresent the point the court was trying to make. In *Moore*, the issue was whether an amendment to the statute of limitations could be applied retroactively to the plaintiff's cause of action. In answer to defendants' assertion that the cause of action had not accrued prior to the enactment of the amendment, and that therefore the cause of action was nonexistent, the court stated:

> "We do not agree that a cause of action is nonexistent prior to the time of accrual. Logic dictates that a plaintiff cannot bring a cause of action until he knows or reasonably should know of his injury, and also knows or reasonably should know that the injury was caused by the wrongful acts of another. *However, that does not mean that the plaintiff does not have an existing cause of action of which he is unaware."* (Emphasis added.) *Moore,* 95 Ill. 2d at 232.

In their complaint, plaintiffs allege that from March 8, 1986, until her death on February 23, 1987, the deceased suffered severe depression and anxiety, mental confusion, severe upper abdominal and lower chest pain, was totally disabled and sustained a loss of wages. If so found by the trier of fact, these allegations would establish that the deceased suffered the requisite injury or damage prior to November 25, 1986, the effective date of the modified comparative negligence statute. The fact that some damage or injury may have occurred prior to the effective date of the statute and some occurred·

after such date does not affect our treatment of the basic issue, *i.e.*, when the cause of action accrued. It is for the trier of fact to determine whether the deceased's interests were invaded prior to that date, and the mere fact that the extent of damages was not immediately ascertainable would not postpone the accrual of the claim. (See *Del Bianco v. American Motorists Insurance Co.* (1979), 73 Ill. App. 3d 743, 747.) We note briefly that defendants' attempt to distinguish *Del Bianco* as concerning only tort actions arising out of contractual obligations is ineffective. In referring to the statement cited above, that court correctly noted, "[t]his is clearly the rule for a pure tort cause of action." *Del Bianco*, 73 Ill. App. 3d at 747.

In addition, we feel compelled to point out that too much reliance by defendants on the "discovery rule" is misplaced. First, statutes of limitations, like other statutes, must be viewed in light of their objectives. (*Geneva Construction Co. v. Martin Transfer & Storage Co.* (1954), 4 Ill. 2d 273, 289.) The purpose of the statute of limitations is certainly not to shield a wrongdoer; rather, it is to discourage the presentation of stale claims and to encourage diligence in the bringing of actions. (*Del Bianco*, 73 Ill. App. 3d at 746.) Second, the discovery rule concerns charging a plaintiff with knowledge of an injury and its wrongful cause for purposes of the running of a statute of limitations. Such is not at issue here. Rather, this case concerns if and when facts existed to support a cause of action for purposes of determining the applicability of the modified comparative negligence statute. Moreover, the discovery rule does not actually provide for new accrual rules; it instead tolls the running of the statute of limitations, until a plaintiff's "discovery," on an *existing* cause of action.

Defendants also argue that, even if the trial court erred in giving the modified comparative negligence instruction, it was harmless error in the absence of a showing that negligence was the sole basis for the jury's verdict. We disagree. The tendered modified comparative negligence instruction was in accord with IPI Civil 3d No. B21.02 and provided in pertinent part as follows:

"The plaintiff has the burden of proving each of the following propositions:

First, that the defendants acted or failed to act in one of the ways claimed by the plaintiff as stated to you in these instructions and that in so acting, or failing to act, the defendants were negligent;

Second, that the plaintiffs' decedent, Elva Sloan, was injured and died;

Third, that the negligence of the defendants was a proximate cause of the injury to the plaintiffs' decedent, Elva Sloan.

*If you find in favor of the plaintiff and against the defendant, you must then consider defendants' claim that Elva sloan [sic] was contributorily negligent.*

\* \* \*

If you find from your consideration of all the evidence that the plaintiff has proved all of the propositions required of her and that the defendant has proved both of the propositions required of him, and if you find that the plaintiff's contributory negligence was greater than 50% of the total proximate cause of the injury or damage for which recovery is sought, *then* your verdict should be for the defendant." (Emphasis added).

According to the plain meaning of the instruction, to reach the issue of the deceased's contributory negligence, the jury had to *first* find for plaintiffs on the issue of liability. If the jury had found for defendants on the liability issue, there would have been no reason to address the special interrogatory which found that the deceased's negligence exceeded 50%. Here, once the jury had found the plaintiff 51% negligent, they had to find in favor of defendants on the general verdict form.

■ We find that the trial court erred when it instructed the jury according to the law of modified comparative negligence. The error was also prejudicial (*Korpalski v. Lyman* (1983), 114 Ill. App. 3d 563, 568), in that it precluded plaintiffs from any recovery once the jury found the deceased 51% negligent. Moreover, the giving of the instruction was not cured by the fact that the jury answered the general verdict form in defendants' favor. We therefore reverse that part of the judgment appealed from.

Since we reverse as to the Survival Act cause of action, we must next consider plaintiffs' argument that the trial court erred in excluding the testimony of their expert economist regarding the economic evaluation of the deceased's loss of enjoyment of life as a component of the element of pain and suffering damages in the Survival Act cause of action. Defendants argue that no such separate category of damages is recognized in Illinois; that such damages are both speculative and punitive in nature; and that even if such damages were recognized, they are better left to the jury. We find that while the concept of loss of the enjoyment of life is a relevant consideration in determining damages for pain and suffering, the trial court did not err in excluding expert testimony on the subject.

We are in basic agreement with defendants' initial assertion that no Illinois decision has determined that a separate award for loss of enjoyment of life damages is expressly recoverable in Illinois. However, plaintiffs do not contend that the loss of enjoyment of life is a *separate* element of compensable damages. Rather, they contend that such loss constitutes a *component* of damages for pain and suffering. In fact, defendants concede as much in their brief. While attempting to shift the focus to the question of whether a separate category of damages should be recognized, defendants in their brief state that "lost enjoyment values in essence are not new, but are part and parcel of the very subjective elements available within the age-old damage areas of disability, disfigurement, and pain and suffering." Later, defendants also state that "a plaintiff's inability to enjoy life to its fullest *** has long been considered one type of suffering to be factored into a general award for damages commonly known as pain and suffering or disability." While Illinois case law on this issue is quite sparse, our research has revealed two cases which may be interpreted to stand, in part, for the proposition that damages for loss of enjoyment of life are to some extent recognized in Illinois.

*Batteast v. Wyeth Laboratories, Inc.* (1988), 172 Ill. App. 3d 114, *rev'd & remanded on other grounds* (1990), 137 Ill. 2d 175, concerned a personal injury action based on theories of negligence, strict liability and willful and wanton conduct. In reviewing the issue of compensatory damages, the court found that since the time of plaintiff's injury, he had suffered from brain damage and epilepsy, and that he was incapable of "appreciating the bare enjoyments of human life." (*Batteast*, 172 Ill. App. 3d at 140.) *Winters v. Greeley* (1989), 189 Ill. App. 3d 590, concerned a claim for punitive damages in a libel action. Defendant in that case argued that presumed damages were not compensatory, but, rather, were punitive in nature and would result in an impermissible windfall to plaintiff. The court disagreed and found that the amount awarded was "an estimate of the extent of loss the plaintiff has suffered in the past and would suffer in the future, either from a monetary or enjoyment of life standpoint." *Winters*, 189 Ill. App. 3d at 598.

We note that neither *Batteast* nor *Winters* addressed the specific issue before us in the instant case, *i.e.*, the admissibility of expert testimony on such damages. We turn now to our discussion of this specific question.

Plaintiffs cite *Sherrod v. Berry* (7th Cir. 1987), 827 F.2d 195, for the propositions that testimony on such damages is admissible, not overly speculative, and of aid to the jury. In *Sherrod*, plaintiff's dece-

dent had been killed by a police officer. Plaintiff then filed a wrongful death action alleging a violation of section 1983 of the Civil Rights Act (42 U.S.C. §1983 (1988)). One of the issues in that case was whether expert testimony as to the economic value of human life was admissible. We note that the expert in *Sherrod*, Stanley Smith, is the same expert whose testimony is at issue in the instant case. Similar to defendants' arguments here, defendants in *Sherrod* argued that Smith's testimony in this area was speculative and inadmissible. The district court and the court of appeals disagreed. The court of appeals stated that it was "axiomatic that plaintiffs seeking to recover the value of a decedent's life must be entitled to submit expert testimony to help guide the jury in reaching an appropriate damages award." (*Sherrod*, 827 F.2d at 205.) That court also stated:

"The trial judge ably addressed defendant's arguments contesting the admissibility of Mr. Smith's testimony concerning the hedonic value of human life, 629 F. Supp. 159 (N.D. Ill. 1985). Judge Leighton explained that the rule against recovery of 'speculative damages' applies where it is uncertain whether the defendant caused the damages, or whether the damages flowed from his act. The fact that the measure or extent of the injury suffered may be uncertain does not bar recovery. Judge Leighton concluded, 'The fact that the hedonic value of a human life is difficult to measure did not make either Smith's testimony or the damages speculative.' 629 F. Supp. at 164.

The testimony of expert economist Stanley Smith was invaluable to the jury in enabling it to perform its function of determining the most accurate and probable estimate of the damages recoverable for the hedonic value of Ronald's life. The trial court committed no error by admitting that testimony." *Sherrod*, 827 F.2d at 205-06.

Defendants argue that the *Sherrod* case is not precedential since it was subsequently vacated, then reversed and remanded. Plaintiffs argue that although *Sherrod* was later vacated, the succeeding court of appeals opinion retained the reasoning and the precedential value of the initial appellate opinion. Although the second opinion did not directly address the issue of Smith's testimony, the court of appeals concluded in its second opinion as follows:

"Because we reverse and remand for a new trial, we need not discuss the district court's other evidentiary rulings or jury instructions. We leave these questions for the district court on remand to decide in light of this court's prior discussions of

those matters, specifically those found in our earlier vacated opinion.

For the afore-mentioned reasons, we reverse and remand this case for further proceedings in the district court consistent with this decision." (*Sherrod v. Berry* (7th Cir. 1988), 856 F.2d 802, 807-08.)

Whether *Sherrod* retained its precedential value, we note that that case involved not an interpretation or application of Illinois law, but rather a civil rights violation under section 1983 of the Civil Rights Act (42 U.S.C. § 1983 (1988)).

According to plaintiffs' offer of proof, their economic expert, Stanley Smith, would have testified to the effect that the value of life is an estimate of the value that society is willing to pay on the average to prevent the loss of life. Specifically, Smith begins by identifying the value of the life of a "statistically anonymous" person. The value range of a statistically anonymous life is between $1.6 million and $8.5 million. In this case Smith would have testified that the value of the statistically anonymous person is $2.7 million. After adjusting this figure for the average life expectancy of an anonymous person in the United States, as well as considering growth and discount rates, Smith would have arrived at a $60,000 annual value for the life of an anonymous person.

In excluding the testimony of plaintiff's expert in the instant case, the trial court reasoned that "any testimony relating to the relationship of the decedent and family and what meaning it has between the parties is something I think the jury is in a better position to decide without imposing an expert's theory as to valuation." We agree.

■■■ As the parties have noted, there is a paucity of Illinois case law to guide us on the specific issue of whether such expert testimony is admissible. However, it is well settled that, with respect to damages for pain and suffering, *i.e.*, nonpecuniary damages, it is improper for counsel to suggest that the jury calculate such damages by placing a dollar figure upon each minute, hour or day as to which pain and suffering was or will be experienced, since such argument presents an illusion of certainty. (*Caley v. Manicke* (1962), 24 Ill. 2d 390, 393-94.) In reaching this conclusion, our Illinois Supreme Court reasoned as follows:

"Pain and suffering have no commercial value to which a jury can refer in determining what monetary allowance should be given to a plaintiff for the pain and suffering he has experienced and is reasonably certain to experience in the future.

This determination, like many others that a jury must make, is left to its conscience and judgment. \*\*\*

It begs the question to say that the jury needs to be guided by some reasonable and practical consideration. A formula by definition is a 'conventional rule or method for doing something, especially when used, applied, or repeated without thought.' [Citation.] It would appear that a formula, rather than encouraging reasonable and practical consideration, would tend to discourage such consideration.

   \*\*\*

Jurors are as familiar with pain and suffering and with money as are counsel. We are of the opinion that an impartial jury which has been properly informed by the evidence and the court's instructions will, by the exercise of its conscience and sound judgment, be better able to determine reasonable compensation than it would if it were subjected to expressions of counsels' partisan conscience and judgment on the matter."

(*Caley*, 24 Ill. 2d at 392-94.)

Moreover, the court noted that while it is accepted practice for counsel to suggest a total monetary award for pain and suffering, such practice is far less misleading than the argument of a mathematical formula. *Caley*, 24 Ill. 2d at 394.

We believe that similar reasoning can be applied, by analogy, to the precise issue in the instant case. Here, plaintiffs seek to present expert economic testimony on damages which, by their very nature, are not amenable to such analytical precision. Expert testimony is admissible when it will assist the trier of fact to understand the evidence or to determine a fact in issue. (*Leonard v. Pitstick Dairy Lake & Park, Inc.* (1984), 124 Ill. App. 3d 580, 587.) Even as to matters of common knowledge and experience of jurors, where helpful to comprehension or explanation, expert testimony is permitted. (*People v. Albanese* (1984), 104 Ill. 2d 504, 518.) However, expert opinions on matters of common knowledge are not admissible unless the subject is difficult of comprehension or explanation. (*Hernandez v. Power Construction Co.* (1978), 73 Ill. 2d 90, 99.) We note that plaintiffs in their brief basically concede that juries understand the concept of the economic value of life in a general sense. Thus, it is not clear that expert testimony on the subject would be of aid to the jury in its deliberations.

The determination as to the admissibility of evidence rests primarily in the discretion of the trial court, and its decision will be reversed only where that discretion clearly has been abused. (*Country*

*Mutual Insurance Co. v. Adams* (1980), 85 Ill. App. 3d 501, 506.) Here, the proposed economic expert testimony would be overly speculative and would serve to invade the province of the jury, and we see no abuse of discretion in the exclusion of such evidence.

For the foregoing reasons, we affirm as to the trial court's rulings on the Wrongful Death Act claims. As to the Survival Act claims, we reverse as to the trial court's ruling on accrual and affirm as to the ruling on the exclusion of expert testimony. The cause is remanded for a new trial consistent with this opinion.

Affirmed in part; reversed in part and remanded.

McLAREN and GEIGER, JJ., concur.