**Charles Robert KAUFMAN, Individually, and as Administrator of the Estate of Donna Marie Kaufman, Deceased, and Charles Robert Kaufman, Plaintiffs,**

v.

**H. Andrew CSERNY, M.D., and Ferrell Hospital, Inc., Defendants.**

Civ. No. 93–4233–JPG.

United States District Court, S.D. Illinois, Benton Division.

June 28, 1994.

---

. John P. Womick, Carbondale, IL, for plaintiffs.

Paul R. Lynch, Craig & Craig, Mt. Vernon, IL, for defendants.

### MEMORANDUM AND ORDER

GILBERT, Chief Judge:

Pending before this Court are three motions for summary judgment: one filed by the plaintiff against the defendant Cserny on the plaintiff's negligence claims (Document No. 31); one filed by the defendant Cserny concerning Counts I, II, III, and with respect to the claims for "loss of enjoyment of life" by the decedent or her next of kin as claimed in Counts I, II, III, VIII, IX and X (Document No. 38) and one filed by the defendant Ferrell Hospital, Inc. ("Hospital") (Document No. 53).

A Court may grant summary judgment only if the party seeking summary judgment demonstrates that no genuine issue of fact exists for trial and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(e); *Wilson v. Chicago, Milwaukee, St. Paul & Pacific R.R. Co.*, 841 F.2d 1347, 1354 (7th Cir.1988). If that showing is made and the motion's opponent would bear the burden at trial on the matter that forms the basis of the motion, the opponent must come forth with evidence to show what facts are in actual dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Donald v. Polk County*, 836 F.2d 376, 379 (7th Cir.1988). Where the moving party fails to meet its strict burden of proof, summary judgment cannot be entered even if the opposing party fails to respond to the motion. *Yorger v. Pittsburgh Corning Corp.*, 733 F.2d 1215, 1222 (7th Cir.1984).

When the parties do not dispute the factual basis of a motion for summary judgment, the court's only inquiry is whether judgment should issue as a matter of law. The burden of proof on this matter rests with the moving party. Summary judgment is inappropriate, however, if the parties disagree about inferences reasonably drawn from undisputed facts. *Bowyer v. United States Dep't of Air Force*, 804 F.2d 428, 430 (7th Cir.1986).

When the parties dispute the facts, the parties must produce proper documentary evidence to support their contentions. The parties cannot rest on mere allegations in the pleadings, *Boruski v. United States*, 803 F.2d 1421, 1428 (7th Cir.1986), or upon conclusory allegations in affidavits. *First Commodity Traders, Inc. v. Heinold Commodities*, 766 F.2d 1007, 1011 (7th Cir.1985). The Court must view the evidence and any permissible inferences from the materials before it in favor of the non-moving party, *Matsushita Elec. Indus. Co., Ltd. v. Zenith*

*Radio Corp.,* 475 U.S. 574, 588–89, 106 S.Ct. 1348, 1357, 89 L.Ed.2d 538 (1986), as long as the inferences are reasonable. *Davis v. City of Chicago,* 841 F.2d 186, 189 (7th Cir.1988). The non-moving party must show that the disputed fact is material; that is, it must be outcome-determinative under the applicable law. *Wainwright Bank & Trust Co. v. Railroadmens Fed. Sav. & Loan Ass'n,* 806 F.2d 146, 149 (7th Cir.1986).

■ In the first motion for summary judgment, the plaintiff asserts that summary judgment should be entered in his favor and against Dr. Cserny on the issue of negligence. In support of this motion the plaintiff provides the Court with an affidavit by Dr. Schwartz which states his opinion that Dr. Cserny violated the standard of care by failing to see Mrs. Kaufman after she presented herself to the emergency room and by failing to provide any backup medical care for Mrs. Kaufman. However, in response to this motion, Dr. Cserny presents this Court with an affidavit by Dr. J. Gregg Fozard which states that Dr. Cserny conducted himself within the standard of care applicable to a reasonably well-qualified physician in 1992.

When faced with "dueling affidavits" such as these the Court must remember the standard for a motion for summary judgment which is that a Court may grant summary judgment only if the party seeking summary judgment demonstrates that no genuine issue of fact exists for trial and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(e); *Wilson v. Chicago, Milwaukee, St. Paul & Pacific R.R. Co.,* 841 F.2d 1347, 1354 (7th Cir.1988). Based upon a review of the evidence presented by way of affidavit in a light most favorable to Dr. Cserny, summary judgment in the plaintiff's favor must be denied.

As to the second motion for summary judgment, the first issue the Court must address is whether or not the Comprehensive Omnibus Budget Reconciliation Act of 1986 ("COBRA"), also known as the Emergency Medical Treatment and Active Labor Act ("EMTALA") found at 42 U.S.C. § 1395dd creates a civil action against an individual physician. The defendant cites to eleven cases in which the federal courts have ad-dressed this issue and found that such a cause of action is inappropriate under EMTALA. However, the defendant also points to two decisions, one of which the plaintiff alleges is not directly on point, out of the Northern District of Illinois which do find that EMTALA creates a cause of action in this situation. *See Sorrells v. Babcock,* 733 F.Supp. 1189 (N.D.Ill.1990) and *Thompson v. St. Anne's Hospital,* 716 F.Supp. 8 (N.D.Ill. 1989).

In response to this argument, the plaintiff asserts that previously in this matter, this Court held that the EMTALA did apply to the defendant Cserny in its ruling on Dr. Cserny's motion to dismiss. The plaintiff asserts that based upon this previous ruling the defendant should not be allowed to effectively overturn this ruling by this motion for summary judgment. The plaintiff, however, has misread the Court's previous ruling. In its Order of December 16, 1993, the Court stated:

> The issue presented by defendant's motion to dismiss is a question of law that has not been resolved in any decision binding on this court. The Court believes, however, that, *even if* the EMTALA does *not* provide a right of action against an individual physician, the plaintiffs have also made sufficient allegations to state a claim under a theory of medical malpractice, for which there is supplemental jurisdiction under 28 U.S.C. § 1367.

Order, 12/16/93, Document No. 21, p. 5.

In a footnote to this section, the Court continued by stating that in regards to whether or not EMTALA is applicable to Dr. Cserny:

> The Court finds it unnecessary to rule upon this question, since an alternative theory of medical malpractice is available. Should a federal court issue an opinion binding upon this Court between now and the time of trial defendant may reassert the defense.

Order, 12/16/93, Document No. 21, p. 5.

The Court clearly did not make the determination that EMTALA applies to Dr. Cserny. Rather, the Court held that based upon the standard of review for a motion to dismiss, the complaint should not be dismissed.

Therefore, this issue is properly before the Court.

In *Sorrells v. Babcock*, 733 F.Supp. 1189, 1194 (N.D.Ill.1990), the court clearly held that a federal court has jurisdiction in CO-BRA suits against emergency room physicians who are alleged to have violated CO-BRA's provisions. In reaching this conclusion, the court reviewed the legislative history of this statute. The court stated that it is clear that COBRA specifically provides for civil monetary penalties against a physician for knowingly violating COBRA's provisions. *See* 42 U.S.C. § 1395dd(d)(1)(B). The court further stated that the Judiciary Committee's rejection of the Ways and Means Committee's initially proposed criminal sanctions for individual physicians under COBRA, and the Judiciary Committee's suggestion instead that civil sanctions be allowed is further evidence that the federal courts have jurisdiction over this type of action. The reason that the Judiciary Committee stated that criminal sanctions were unnecessary was that the other sanctions would serve to deter violations. H.R.Rep. No. 241(III), 99th Cong., 1st Sess. 7, *reprinted in* 1986 U.S.Code Cong. & Admin.News 42, 729. The court then seemed to state that since by the statute both hospitals and physicians are subject to civil sanctions, even though the Judiciary Committee noted that damages actions may only be brought against the hospitals, federal courts also have jurisdiction in COBRA suits against emergency room physicians who have violated COBRA provisions.

There are a number of cases which take a contrary position from the *Sorrells* court. *See Delaney v. Cade*, 986 F.2d 387 (10th Cir.1993); *Gatewood v. Washington Healthcare Corp.*, 933 F.2d 1037 (D.C.Cir.1991); *Jones v. Wake County Hosp. System, Inc.*, 786 F.Supp. 538 (E.D.N.C.1991); *Lavignette v. West Jefferson Medical Center*, 1990 WL 178708 (E.D.La.1990). However, one case in particular fully discusses the reasons for this contrary position. *Baber v. Hospital Corp. of America*, 977 F.2d 872 (4th Cir.1992). In the *Baber* court's analysis of the legislative history of COBRA, it concluded:

[T]he legislative history makes it clear that, far from intending to allow patients to sue doctors, Congress intentionally limited patients to suits against hospitals. An earlier draft of § 1395dd(d)(2) simply provided patients with a private cause of action for EMTALA violations. Congress rejected this draft version as vague because it "did not precisely identify which parties could bring actions under the provisions, nor did it identify those against whom they could bring such actions." H.R.Rep. No. 241, 99th Cong., 1st Sess., pt. 3, at 6, (1986) *reprinted in* 1986 U.S.C.C.A.N. 42, 579, 728. The Committee noted that the amendment, which was subsequently adopted, made it clear that:

> [T]he section authorized only two types of actions for damages. The first of these could be brought by the individual patient who suffers harm as a direct result of a hospital's failure to appropriately screen, stabilize, or properly transfer that patient. The second type of action could be brought by a medical facility which received an improperly transferred emergency patient (within the meaning of § 124) or a woman in active labor. *It also clarifies that actions for damages may be brought only against the hospital which has violated the requirements of § 124.*

*Id.* at 6–7, *reprinted in* 1986 U.S.C.C.A.N. at 728 (emphasis added). Thus, the statute's legislative history demonstrates that Congress intended to limit the patient's right to recover damages for violations of EMTALA to suits against hospitals.

The *Baber* court went on to state that just because the Department of Health and Human Services may obtain administrative sanctions against a physician, does not mean that an individual may bring a civil damages actions against the physician also. The Court stated that this is clear in light of the fact that § 1395dd(d) clearly applies administrative sanctions against both the hospital and the physician and allows a private cause of action only against the hospital. The *Baber* court stated that it would not follow the holding in *Sorrells*, because in dicta, the *Sorrells* court confused the administrative enforcement proceedings and monetary penalties under EMTALA with personal injury

actions and civil damages. The *Baber* court stated, "Unlike the *Sorrells* court, we refuse to second-guess Congressional intent".

■ Based upon a review of the caselaw on this issue and this Court's own review of the statute and the legislative history, this Court concludes that EMTALA does not provide a private right of action by an individual against a physician. This Court does not want to second-guess what Congress intended by this statute and is therefore, going to apply the clear language of the statute. In § 1395dd(d)(1)(A) and (B) it is clear that Congress understands how to sanction not only the hospitals for violations of this section but also the physicians. Therefore, if Congress had intended to extend this "dual-responsibility" into the civil enforcement section of the statute it knew how. Congress, however, chose not to do so.[1]

Accordingly, this Court finds that EMTALA does not provide for a private right of action against an individual physician. Therefore, the defendant Cserny is entitled to summary judgment as to Counts I, II, and III.

■ The second issue presented by this motion to dismiss is whether or not "loss of enjoyment of life" or in other words, hedonic damages is to be considered a distinct item of damages, separate and apart from pain and suffering, under Illinois law as requested in Counts VIII, IX and X. In determining the recoverability of hedonic damages under Illinois law, it is important to distinguish between claims brought under the Illinois Survival Act, 755 ILCS 5/27–6 (1992), and claims brought under the Illinois Wrongful Death Act, 740 ILCS 180/1, 180/2 (1992). "A survival action allows for recovery of damages for injury sustained by the deceased up to the time of death; a wrongful death action covers the time after death and addresses the injury suffered by the next of kin due to the loss of the deceased rather than the injuries personally suffered by the deceased prior to death." *Wyness v. Arm-*

*strong World Indus.*, 131 Ill.2d 403, 137 Ill. Dec. 623, 626, 546 N.E.2d 568, 571 (1989). Based upon the few decisions that have addressed the issue, it is clear that damages for loss of enjoyment of life are not recoverable under the Illinois Wrongful Death Act. *Gonzales v. City Wide Insulation*, No. 88 C 1299, 1990 WL 77525, at *4 (N.D.Ill. May 29, 1990) (finding that Wrongful Death Act "does not provide for recovery of hedonic damages for recovery of hedonic damages in light of the fact that it was designed to 'compensate the surviving spouse and the next of kin for the pecuniary losses sustained due to the decedent's death.'"). However, such damages are recoverable in survival actions—at least "to some extent...." *Fetzer v. Wood*, 211 Ill.App.3d 70, 155 Ill.Dec. 626, 634, 569 N.E.2d 1237, 1245 (2d Dist.1991).

■ Although the precise extent to which hedonic damages may be recovered in a survival action is not entirely clear under Illinois law, this Court finds that Illinois does allow recovery for lost enjoyment of life in survival actions—at least as a component of pain and suffering or disability and disfigurement. *See Id.* at 81–82, 155 Ill.Dec. at 633, 569 N.E.2d at 1244. Accordingly, hedonic damages will be allowed to be recovered in Count VIII under the Illinois Survival Act, however, hedonic damages are not available under Count IX, a wrongful death claim and Count X, a family expense act claim.

The final motion for summary judgment was filed by the defendant Hospital and seeks summary judgment in its favor as to Counts IV, V, VII and VII of the amended complaint which are all brought under EMTALA. Specifically, the defendant Hospital asserts that the plaintiff is unable to prove two essential propositions of the Plaintiff's asserted claims because:

(1) The plaintiff's decedent, Donna Kaufman, was provided the standard medical screening procedure of Ferrell Hospital before she was asked to go to this Defendant's private office for care.

---

1. 42 U.S.C. § 1395dd(d)(2)(A) states:

**(A) Personal harm**

Any individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section may, in a civil action *against the participating hospital*, obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief is appropriate. (emphasis added).

(2) The defendants did not *actually know* that the decedent, Donna Kaufman, had an emergency medical condition prior to or at the time when the decedent was asked to go to defendant Cserny's private office for care.

 The Court finds, upon review of the memorandum in support of this motion, the response thereto, and all of the documentation in support of each, that genuine issues of material fact are present to prevent summary judgment at this juncture. Based upon the information presented to the Court, the issue of whether or not the plaintiff's decedent received a standard medical screening and, moreover, whether the Hospital "actually knew" that the plaintiff's decedent had an emergency medical condition are issues to be left for a jury to decide.

The second issue raised by this motion for summary judgment is whether or not "loss of enjoyment of life" is recoverable by the plaintiff as claimed in Counts XI, XII, and XIII. In response to this argument, the Court refers the parties to the discussion of hedonic damages above. Therefore, hedonic damages will be allowed to be recovered in Count XI under the Illinois Survival Act, however, hedonic damages are not available under Count XII, a wrongful death claim and Count XIII, a family expense act claim. In regards to the issue of whether or not the plaintiff is entitled to have an expert testify regarding hedonic damages, this issue is better raised in a motion in limine and will therefore not be addressed at this juncture.

In conclusion, the motion for summary judgment filed by the plaintiff against the defendant Cserny on the negligence claims (Document No. 31) is hereby **DENIED;** the motion for summary judgment filed by the defendant Cserny (Document No. 38) is hereby **GRANTED IN PART AND DENIED IN PART,** summary judgment is hereby entered in favor of the defendant Cserny on Counts I, II, III, and with respect to the claims for "loss of enjoyment of life" by the decedent or her next of kin as claimed in VIII, IX and X, hedonic damages will only be allowed as to Count VIII only; and finally, the motion for summary judgment filed by the defendant Hospital (Document No. 53) is hereby **GRANTED IN PART AND DENIED IN PART,** summary judgment is hereby denied to the defendant Hospital as to Counts IV, V, VI and VII, and with respect to the claims for "loss of enjoyment of life" by the decedent or her next of kin as claimed in XI, XII, and XIII, hedonic damages will be allowed as to Count XI only.

**IT IS SO ORDERED.**