STATE of Missouri,
Plaintiff-Respondent,

v.

Michael WILLIAMS,
Defendant-Appellant.

No. 40470.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 24, 1980.

Robert C. Babione, Public Defender, Blair K. Drazic, Asst. Public Defender, St. Louis, for defendant-appellant.

George A. Peach, Circuit Atty., Michael L. Sullivan, Asst. Circuit Atty., St. Louis, John Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

PUDLOWSKI, Judge.

Defendant was convicted of first degree burglary, § 560.040 RSMo 1969, and forcible rape, § 590.260 RSMo 1969, for breaking and entering into the apartment of one Ms. H and raping her on July 6, 1977. Defendant was also convicted of first degree burglary and assault with intent to maim with malice aforethought for breaking into the same apartment and attacking a second woman, Ms. R, on August 23, 1977. The two transactions, that which occurred on July 6, 1977, and that which occurred on

August 23, 1977, were consolidated for trial by stipulation of the parties. This consolidation was initially suggested by defense counsel and later agreed to by the prosecutors. Defendant was found guilty by a jury on all four of the above counts. The court after finding that defendant had a previous conviction, sentenced him to ten years for each count of burglary, thirty years for the rape offense and thirty years for the assault count, all terms to run concurrently.

The evidence shows that during July of 1977, Ms. H was a student at the St. Louis College of Pharmacy and that she lived in an apartment near that institution. At approximately 10:00 p. m. Ms. H, after having checked the doors and windows of her apartment, retired for the evening. At approximately 4:00 a. m. the following morning a young black male entered the apartment by forcing open a window screen. Ms. H was awakened, threatened with a knife and subsequently raped by the intruder. After completing the act the assailant ran out the back door. Ms. H telephoned her boyfriend who brought her to a hospital. At the hospital Ms. H was able to give the police a vague description of her assailant. She was later able to identify defendant as her attacker when examining police photographs and during a line-up session. Ms. H testified at trial that there was no question in her mind that defendant was her attacker. After recuperating Ms. H moved out of the apartment in which she had been attacked.

In late August of 1977, Ms. R, another student at St. Louis College of Pharmacy, was living in the apartment previously occupied by Ms. H. On the evening of August 22, 1977, Ms. R went to bed at 11:00 p. m. Sometime after falling asleep Ms. R was awakened when a man hit her in the mouth with a brick. Ms. R who naturally feared for her life rolled over in the bed and covered herself with a pillow in an effort to protect herself. However, Ms. R's efforts were to no avail and the assailant continued to strike her with the brick in the regions of the head, face and shoulders. Eventually Ms. R was able to raise herself out of the bed. She was screaming and trying to strike and scratch her attacker. Through these efforts Ms. R succeeded in breaking away from the assailant. She made her way to a window and screamed for help. By this time the attacker was exiting out a window. The screen covering this window had been ripped from its frame. Ms. R's screams were heard by other pharmacy students who lived in a nearby house. These students brought her to the hospital where she received immediate medical attention. There was no doubt in Ms. R's mind that defendant was the man who had attacked her.

Defendant testified on his own behalf at trial. On direct examination he stated that he was with a girlfriend in the early morning hours of August 23, 1977, and did not remember where he was on July 6. On cross examination he claimed that on July 6, he was living with a family.

Defendant's first contention is that the trial court erred in permitting the jury to consider evidence of the crimes committed on July 6, 1977, i. e. first degree burglary and rape, for the limited purpose of determining the identification, motive and intent of the assailant in committing the crimes on August 22, 1977, i. e. first degree burglary and assault with intent to maim. Similarly, defendant's second allegation is that the trial court erred by admitting evidence of the offenses committed on August 23, 1977, to prove the identity, intent and motive of the offender who committed the crimes of July 6, 1977. Because of their similarity, defendant's first two points will be considered together.

▮ The well settled rule is that proof of the commission of a separate and distinct crime is not admissible to prove the crime charged unless it directly establishes: (1) motive, (2) intent, (3) the absence of mistake, (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, (5) the identity of the person charged with the commission of the crime. *State v. Reese*, 274 S.W.2d 304, 307 (Mo. banc 1954). The test for

admission is whether evidence of the separate crime is logically relevant to the particular exception for which it is sought to be introduced. *State v. Reese*, supra. If the evidence is relevant "it is not to be rejected merely because it incidentally proves the defendant guilty of another crime." *State v. Knighton*, 518 S.W.2d 674, 679 (Mo.App. 1975). However, the high potential for prejudice resulting from the introduction of this class of evidence requires that its admission be closely scrutinized. Thus, a trial court in determining whether to admit evidence of another crime must weigh its probative value or the actual need for such evidence against the prejudice which defendant may suffer upon its admission. *Burr v. State*, 542 S.W.2d 527 (Mo.App. 1976).

■ On balance, the trial court did not abuse its discretion in permitting the jury to consider the evidence of the separate criminal transactions involved in this case. The two transactions were committed in strikingly similar fashion. The crimes were committed in the same apartment. They both occurred in the early morning hours. The victims were both women and students at the St. Louis College of Pharmacy. The evidence showed that the defendant gained admittance to the apartment through a screened-in window. Both women were asleep in bed when awakened by defendant. Both were assaulted by defendant. Ms. H was raped at knife point, however, Ms. R was beaten with a brick and able to escape and scream for help. Both victims were able to positively identify defendant as the man who committed the crimes. Evidence of the July 6, 1977, crime was relevant to establishing the identity of the offender committing the August 23, 1977, crimes and vice versa because the situs of the criminal acts were identical, because nothing was stolen on either occasion and because the time of the occurrences, nature of the victims, method of entry, and degree of brutality employed were remarkably similar. From these similarities an inference arises that the two criminal transactions were committed by the same person. Thus evidence of the July 6, crimes is relevant to show the identification of the person committing the August 23, crimes and vice versa. Further, evidence of the first criminal transaction helps establish the defendant's motive in committing the second. In the first instance defendant entered surreptitiously and held his victim at knife point. Although the defendant had the opportunity to steal, the evidence shows no goods were taken from the premises. An inference arises that in entering the apartment on the second occasion the defendant had the same motive. This inference is bolstered by the fact that again the defendant had the opportunity to steal and again he failed to do so. The fact that the second victim was able to escape defendant's clutches before being sexually assaulted does not negate the inference that defendant's motive in committing the second crime was the same as that in committing the first. Similarly, commission of the second crime raises an inference that defendant's motive was to wreak great bodily harm upon his victim. Even though motive is not an element of any of the crimes defendant was charged with, motive can "serve as evidence of . . . a specific intent constituting an element of a crime." *State v. Henderson*, 301 S.W.2d 813 (Mo. 1957). Defendant was convicted of two counts of first degree burglary, which requires the intent to commit a felony, and of assault with intent to maim with malice. §§ 560.040 and 559.180 RSMo 1969. The fact that defendant broke into the apartment while Ms. H resided there and raped her is clearly relevant to his intent in breaking into the same apartment while Ms. R resided therein. Further, the fact that the rape occurred at knife point, upon threat of great physical harm indicates the degree of violence which the defendant was willing to employ to accomplish his goal. Thus, this aspect of the July 6, crimes was relevant to establishing defendant's intent in committing the offenses of August 23. The August 23, crimes, burglary and assault, were similarly relevant to show defendant's intent on July 6. In breaking into the apartment on July 6, the clear and immediate

inference is that defendant intended to brutally assault the person of Ms. H.

The strength of the above inferences concerning defendant's identity, motive of intent arising from considering evidence of both criminal acts is in some instances strong and in others weak. However, in our view the trial court did not abuse its discretion in admitting the evidence for the limited purpose of determining defendant's identity, motive and intent.

■ Defendant's third contention is that the trial court erred in overruling his objection to Ms. R's direct testimony during which she recounted that she had given a police officer who questioned her at the hospital emergency room a detailed description of her assailant. Defendant fit this detailed description. The testimony was given during direct examination at a time which Ms. R had neither been impeached nor contradicted concerning her ability to or veracity in identifying the defendant as her assailant. The general rule is that absent the introduction of evidence impeaching or contradicting the testimony of a witness' prior extrajudicial statements are inadmissible. The traditional rationale is that such statements are self-serving hearsay when offered to prove the truth of the matters asserted therein. *State v. Fleming*, 188 S.W.2d 12, 16 (Mo.1945), 133 A.L.R. Ann. 1445, 1455. Because Ms. R's description was elicited on direct examination, before her credibility was attacked, the evidence of the prior extrajudicial description, in all its detail, should have been excluded.

However, merely because testimony is erroneously admitted, reversal is not mandated. Rule 83.13. The admission of cumulative and harmless evidence does not always demand reversal. *State v. Dagaffenreid*, 477 S.W.2d 57, 64 (Mo. banc 1972). Especially if the properly admitted evidence is strong and consistent. *Thomas v. United States*, 281 F.2d 132, 136 (8th Cir. 1960). In this case the victim had made at least three positive identifications of the defendant. At trial during redirect, after her credibility had been assailed, Ms. R testified forcefully as to her abilities to observe and recall

details. Consistency of testimony, as with inconsistency of testimony, is a question properly within the sphere of the jury unless admission is prejudiced. *State v. Maxwell*, 502 S.W.2d 382, 391 (Mo.App.1973). In light of consistency of the identification and the circumstances in which the testimony was given the description in our view, is both cumulative *and* harmless. *State v. Ashew*, 570 S.W.2d 798, 800 (Mo.App.1978).

■ Defendant's fourth contention is that the court erred in overruling defendant's motion for mistrial made during the state's cross examination of the defendant. During the cross examination of the defendant the following exchange occurred.

Q. (*By Prosecutor*) That building, what is it, do you know what it is? (Referring to the scene of the crimes).

A. (*Defendant*) It's a normal house. There are three in a row.

Q. It's a sorority house for girls that go to the pharmacy

A. I don't know.

Q. Girls that go to pharmacy school and—

(*Defense counsel*) Your Honor, he is testifying and he is denying our right to confrontation.

(*Prosecutor*) Cross examination.

(*Defense counsel*) He is arguing to the witness and testifying himself rather than asking a question. I move for a mistrial.

(*The Court*) You may lead the witness but please give him a chance to answer. Motion for mistrial will be overruled.

Defendant argues that he was prejudiced because the state improperly introduced facts into evidence, facts which were not susceptible to cross examination, thereby adversely affecting defendant's right to confrontation as guaranteed by the Sixth and Fourteenth Amendments. We do not agree.

The defendant was charged with criminal actions that occurred in the same apart-

ment on two separate occasions; he was arrested in the immediate vicinity of the apartment building on a later date. The prosecution, on cross examination, properly inquired as to the appellant's knowledge of the type of building and was attempting to show that the appellant knew that it housed women who attended the St. Louis College of Pharmacy. Whether or not defendant knew of these facts was a matter particularly within the personal knowledge of defendant. It is true that the questions were inartistically stated but, the form of the question, standing alone, neither prejudiced nor denied defendant the right to confrontation. Especially since the trial judge was clearly monitoring the exchange. The trial court has the primary responsibility for controlling the examination of witnesses. *State v. Smith*, 534 S.W.2d 604 (Mo.App. 1976). The trial court is vested with this responsibility because it has the primary opportunity to observe the exchanges between counsel and witness. The decision of the lower court will not be reversed without a showing of abuse of discretion. *State v. Mayberry*, 272 S.W.2d 236, 242 (Mo.1954). No such abuse is shown in this case.

The appellant's final contention is based on alleged prejudicial statements made during the prosecution's final argument. The prosecutor was arguing the issue of the defendant's credibility:

> The judge tells you that as far as credibility and believability of the witness, you take into consideration the fact he has been convicted of a crime. I mean, why is it? It is just common sense and reason if you have been convicted of a crime involving a type of thing—I mean, what a burglar does is break into somebody's house.

At this point, the defendant moved for a mistrial claiming the prosecutor had argued prior conviction. The court overruled the motion for a mistrial but sustained the objection. The prosecutor continued:

> See, you have somebody who commits a crime like this, and the oath doesn't mean anything to them; somebody that is going to break into someone's house is not

going to be the type of person you can count on. Would you like Michael Williams to be a witness for you or anybody for some kind of background. I'm not saying once he has assaulted therefore he will assault somebody again; once you burglarize you will burglarize again.

 The declaration of a mistrial is a drastic remedy which should be used only in extraordinary circumstances. *State v. Hamell*, 561 S.W.2d 357 (Mo.App.1977). Whether a remark by a prosecutor in closing argument requires a mistrial is largely within the discretion of the trial court. Appellate courts will not interfere unless the record shows statements made were plainly unwarranted and clearly injurious. *State v. Huchinson*, 458 S.W.2d 553, 556 (Mo. banc 1970), *State v. Wright*, 558 S.W.2d 321 (Mo. App.1977). The defendant contends that in the above comments the State argued unrelated prior convictions as a basis for determining defendant's guilt of the crimes charged. We cannot accept defendant's reading of the above comments. We think it is left to doubt whether the prosecutor was arguing that the evidence of past crimes gives rise to an inference that defendant was not worthy of belief or that he was guilty of the present crimes charged. Thus, we believe that the prosecutor's characterization of defendant's burglary activities is ambiguous. We recognize that "closing arguments of counsel are seldom carefully constructed in toto before the event; improvisation frequently results in syntax left imperfect and meaning less than crystal clear, while those general observations in no way justify prosecutorial misconduct, they do suggest that a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury sitting through a lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." *State v. Wright*, supra at 323. Further, the trial court, in an attempt to minimize any prejudice suffered by defendant, sustained defense counsel's objection to the above comments and admonished the prosecutor "to stick to the issue."

In light of the ambiguous nature of the offending statement and the remedial action taken by the trial court, we cannot say that there was an abuse of discretion in this instance.

Judgment affirmed.

GUNN, P. J., and STEPHAN, J., concur.