**William SULLIVAN, lawful heir of Norma J. Sullivan, and/or personal representative for the estate of Norma J. Sullivan, Plaintiff,**

v.

**UNITED STATES GYPSUM COMPANY, Defendant.**

No. 89–2366–JWL.

United States District Court, D. Kansas.

Aug. 17, 1994.

John M. Klamann, Payne & Jones, Chtd., Overland Park, KS, Kenneth B. McClain, Steven E. Crick, Humphrey, Farrington & McClain, Independence, MO, Michael D. Strohbehn, Walters, Bender & Strohbehn, Kansas City, MO, for plaintiff.

Spencer J. Brown, Keith A. Cary, Deacy & Deacy, Philip R. Dupont, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, MO, Dennis J. Stanchik, Silverman & Stanchik, Mission, KS, E. Ralph Walker, Brown, Winick, Graves, Donnelly, Baskerville & Schoenebaum, Des Moines, IA, James D. Pagliaro, Morgan, Lewis & Bockius, Philadelphia, PA, Julia Bennett Jagger, Freeman & Hawkins, Atlanta, GA, for defendant.

## *MEMORANDUM AND ORDER*

LUNGSTRUM, District Judge.

### I. *Introduction*

This is a wrongful death case alleging strict liability and negligence as a result of plaintiff's decedent's alleged exposure to an asbestos-containing material manufactured and sold by defendant in an unreasonably dangerous condition without warning of the presence or dangers of asbestos in the product. The matter is currently before the court on plaintiff's motion for partial summary judgment that the acoustical plaster installed in Salina High School is defendant's product, Audicote (Doc. # 104), and defendant's motion to preclude testimony regarding hedonic damages (Doc. # 115).[1] For the

---

1. This case was transferred from the multi-district asbestos product liability litigation in the United States District Court for the Eastern District of Pennsylvania, which retained all punitive damage issues. Accordingly, the court finds de-

reasons set forth below, plaintiff's motion for partial summary judgment is denied and defendant's motion to preclude testimony regarding hedonic damages is granted.

## II. Legal Standards

A motion for summary judgment gives a judge an initial opportunity to assess the need for a trial without weighing the evidence or determining credibility. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2512.

The party who files a motion for summary judgment has the initial burden of demonstrating the absence of a genuine issue of material facts concerning its claims. This burden may be met by showing that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. The nonmoving party may not simply rest on its pleadings in the case but has the affirmative duty to come forward with facts to establish that a genuine issue exists necessitating a trial in the case. *Id.* Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2555.

## III. Discussion

### A. Plaintiff's motion for partial summary judgment

In his motion for summary judgment, plaintiff seeks a determination from the court that the asbestos-containing acoustical plaster material installed in the Salina, Kansas high school in which Norma Sullivan worked was defendant's product, Audicote. In support of his motion, plaintiff relies on various portions of the deposition testimony of his expert, Dr. William Longo, and on Dr. Longo's conclusion, which is memorialized in a letter wherein Dr. Longo states that following constituent analysis of a plaster sample provided by Richard Hatfield "[o]ur results show that the asbestos containing plaster is a product called Audicote, and was manufactured by the United States Gypsum Company." Plaintiff also relies on various portions of deposition testimony by defendant's expert, Dr. Richard Lee, to reach the conclusion that Dr. Lee has testified that there "were no significant discrepancies between samples analyzed and the product Audicote."

In response to plaintiff's motion, defendant has attached portions of Dr. Lee's deposition testimony wherein Dr. Lee relates that his analysis revealed findings which were consistent with the product Audicote, but that it also revealed findings which were not consistent with Audicote. Defendant also produces evidence calling into question whether the sample analyzed by plaintiff's expert was representative of all the ceiling material used in the high school, and evidence indicating that materials analyzed from the school showed a wide variance in asbestos content.

fendant's motion for summary judgment as to punitive damages (Doc. # 106) to be moot.

Following a thorough review of the record, the court finds that questions of material fact exist as to the presence and extent of defendant's Audicote product that was installed in the building. Accordingly, plaintiff's motion for partial summary judgment on this issue is denied.

## B. Hedonic Damages

In its motion to preclude testimony regarding hedonic damages, defendant seeks to preclude certain testimony of plaintiff's economist, Stan Smith, regarding the loss of enjoyment of life sustained by Norma Sullivan and William Sullivan. Plaintiff seeks to recover two categories of hedonic damages. The first of these is the loss of the pleasure and enjoyment of life allegedly sustained by Norma Sullivan, which Mr. Smith calculates to be $1,410,001. The second is the loss of enjoyment of life allegedly sustained by William Sullivan due to the death of Norma Sullivan, calculated to be $1,027,883.

Mr. Smith's model for calculating monetary figures for loss of enjoyment of life provides an estimate based on a number of economic studies that, according to Mr. Smith, analyze what we, as a contemporary society, are willing to pay to preserve the pleasure of life. The studies examine incremental pay for risky occupations as well as a multitude of data regarding expenditures for life savings by individuals, industry, and state and federal agencies. The underlying studies surveyed by Mr. Smith in developing his model fall into three general groups: (1) consumer purchases of safety devices; (2) wage risk premiums to workers; and (3) cost-benefit analyses of regulations.[2]

Based on his review of these numerous studies, Mr. Smith has calculated monetary values for the life of a statistically average person. To calculate Norma Sullivan's alleged damages for loss of enjoyment of life,

Mr. Smith took the date of her death and then calculated her life expectancy which ran through the year 2011. He then inserted pre-calculated monetary values assigned to statistically average persons and filled in the monetary figures for each year, from the date of her death through the end of her life expectancy. These calculations do not take into account any specific facts about Mrs. Sullivan or her life. Thus, the value attributed by Mr. Smith to Mrs. Sullivan's loss of enjoyment of life would not differ from the value for any other 59 year old woman. In calculating Mr. Sullivan's alleged loss of enjoyment of life by virtue of the death of Norma Sullivan, Mr. Smith relies on the identical figures used to calculate the value of Mrs. Sullivan's life, the only exception being that Mr. Sullivan's losses end at the year 2004 rather than 2011 because of Mr. Sullivan's shorter life expectancy.

 The court finds that Mr. Smith's proffered testimony should be precluded on two separate grounds. The first ground is this court's belief that the type of loss of enjoyment of life damages sought by plaintiff, wherein plaintiff seeks alleged damages for Mrs. Sullivan's loss of enjoyment of life following her death, simply are not allowed under Kansas law. Kansas law does not provide a separate and distinct category of damages for loss of enjoyment of life. Rather, the Kansas Supreme Court has stated that "loss of enjoyment of the pleasurable things in life is inextricably included within the more traditional areas of damages for disability and pain and suffering." *Gregory v. Carey*, 246 Kan. 504, 513, 791 P.2d 1329 (1990); *Leiker By and Through Leiker v. Gafford*, 245 Kan. 325, 340, 778 P.2d 823 (1989). Further, Kansas follows the majority rule that damages are recoverable only for pain and suffering which is consciously experienced. *Gregory*, 246 Kan. at 509, 791 P.2d 1329; *Leiker*, 245 Kan. at 342, 778 P.2d 823.

---

**2.** One consumer safety study relied on by Mr. Smith analyzes the costs of smoke detectors and the lifesaving reduction associated with them. One wage premium study examines the differential rates of pay to policemen in several different cities, examining the relationship between mortality and pay rate. A study of government regulation relied on by Mr. Smith examines the lifesaving resulting from the installation of smoke

stack scrubbers at high-sulphur, coal-burning power plants. As a hypothetical example of the methodology, Mr. Smith cites an example assuming that a safety procedure costs $100 and results in lowering the risk of death per person from .0003 to .00028; the change of .00002 associated with the cost of $100 implies that the cost per life saved is $100/.0002, or $5,000,000, if such procedure is taken.

Accordingly, the court does not believe Kansas would allow damages based on Mr. Smith's calculations, which are based on Mrs. Sullivan's loss of enjoyment of life for the years following her death.[3]

■ The second, and equally more important, reason why the court finds that the testimony of Mr. Smith regarding hedonic damages should be precluded is that the court does not believe that the testimony is scientifically valid, nor that it would assist the trier of fact to understand the evidence or determine a fact at issue. Under Fed. R.Evid. 702, expert testimony may be proffered if it will "assist the trier of fact to understand the evidence or to determine a fact in issue." A court must assess "whether the reasoning or methodology underlying the testimony is scientifically valid," and whether "that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* — U.S. —, —, 113 S.Ct. 2786, 2796, 125 L.Ed.2d 469 (1993). The court's inquiry is a flexible one. *Id.* at —, 113 S.Ct. at 2792.[4]

This court's concern is that the willingness-to-pay studies upon which Mr. Smith's calculations are based have no apparent relevance to the particular loss of enjoyment of life suffered by a plaintiff due to an injury or death. The studies relied on by Mr. Smith do not use methodology designed to calculate the loss of enjoyment of life, yet are nonetheless extrapolated by Mr. Smith into what he claims to be valid data for calculating damages for both Mr. and Mrs. Sullivan's loss of enjoyment of life. Mr. and Mrs. Sullivan suffered totally distinct and different damages (Mrs. Sullivan died, Mr. Sullivan faces living without the support and companionship of his wife), yet, under Mr. Smith's analysis their damages are identical, save only an adjustment for differing the expectancy. The court finds that the proffered testimony of Mr. Smith simply fails in any real terms to provide a measure of the loss and affection to Mr. Sullivan due to his wife's death. The court does not believe that the distinct and personal relationship that Mr. Sullivan enjoyed with his wife has commercial value which can be determined by a comparison to the alleged value that society places on the contributions of a statistically average person.

Plaintiff seeks to present expert testimony on precise damage calculations for loss of enjoyment of life. The court finds that such damages are, by their very nature, not amenable to such analytical precision. The court does not believe that such testimony would be helpful to the jury. The court believes that a jury is capable of determining these losses from its own experiences and knowledge, and through testimony by Mr. Sullivan, and further concludes that the proffered testimony of Mr. Smith would improperly invade the province of the jury.[5]

## IV. Conclusion

**IT IS, THEREFORE, BY THE COURT ORDERED THAT** plaintiff's motion for partial summary judgment (Doc. # 104) is denied.

3. Similarly, the court finds that Mr. Smith's calculations for Mr. Sullivan's loss of enjoyment of life, which are based on the identical figures calculating Mrs. Sullivan's loss of enjoyment of life for the years after her death, are not proper under Kansas law.

4. Procedurally, as the Supreme Court observed in *Daubert:* "[f]aced with a proffer of scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert,* — U.S. at —, 133 S.Ct. at 2796.

5. Our decision here, precluding Mr. Smith's proffered testimony as to hedonic damages, is in accord with the great weight of authority from both federal and state courts which have precluded similar proffered expert testimony. *See Mercado v. Ahmed,* 756 F.Supp. 1097 (N.D.Ill. 1991); *Sterner v. Wesley College, Inc.,* 747 F.Supp. 263 (D.Del.1990); *Patch v. Glover,* 248 Ill.App.3d 562, 618 N.E.2d 583, 188 Ill.Dec. 13 (Ill.App. 1 Dist.1993); *Foster v. Trafalgar House Oil & Gas,* 603 So.2d 284 (La.App. 2 Cir.1992); *Southlake Limousine and Coach, Inc. v. Brock,* 578 N.E.2d 677 (Ind.App. 3 Dist.1991); *Fetzer v. Wood,* 211 Ill.App.3d 70, 569 N.E.2d 1237, 155 Ill.Dec. 626 (Ill.App. 2 Dist.1991). *See also Doe v. Tag, Inc.,* 1993 WL 484212 (N.D.Ill.1993); *Craft v. Matlack, Inc.,* 1992 WL 124406 (E.D.La. 1992); *Augustin v. Hyatt Regency of New Orleans,* 1992 WL 21823 (E.D.La.1992).

**IT IS FURTHER ORDERED THAT** defendant's motion to preclude testimony regarding hedonic damages (Doc. # 115) is granted.

**IT IS FURTHER ORDERED THAT** defendant's motion for summary judgment as to punitive damages (Doc. # 106) is moot.

**IT IS SO ORDERED.**