Peter H. and Carolyn SCHUMANN,
Appellant,

v.

MISSOURI HIGHWAY AND TRANS-
PORTATION COMMISSION, Re-
spondent.

State of Missouri, through Attorney
General, Jeremiah W. ("Jay")
Nixon, Intervenor.

Nos. WD 49581, WD 49590.

Missouri Court of Appeals,
Western District.

Oct. 17, 1995.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 5, 1995.

Application to Transfer Denied
Jan. 23, 1996.

Roger G. Brown, Renee T. Duffield, Roger G. Brown & Associates, Jefferson City, for appellant.

Zachary T. Cartwright, Jefferson City, for respondent.

Jeremiah W. (Jay) Nixon, Attorney General, Karen King Mitchell, Georgianne L. Huckfeldt, Assistant Attorneys General, Jefferson City, for Intervenor.

Before ULRICH, P.J., and LOWENSTEIN and ELLIS, JJ.

ELLIS, Judge.

Peter H. Schumann and the Missouri State Highway and Transportation Commission ("Commission") appeal from a judgment of the Randolph County Circuit Court. Schumann filed the action seeking damages for personal injuries he sustained in a vehicular accident, allegedly due to the Commission's design, construction and maintenance of a dangerous and defective condition. The case was tried to a jury which returned a verdict in favor of Schumann and against the Commission, with total damages assessed at $191,000, and allocating fault 70% to the Commission and 30% to Schumann. The trial court entered judgment in favor of Schumann for $133,700 (70% of $191,000), but subsequently amended the judgment to the sum of $100,000 to reflect the statutory cap on damages against governmental administrative agencies pursuant to § 537.610.[1]

On June 6, 1990, at approximately 9:50 a.m., Schumann was driving his 1971 Massey Ferguson 410 self-propelled combine in the southbound lane of U.S. Highway 63, a two-lane undivided highway constructed and maintained by the Commission. Schumann had recently sold the combine and was delivering it from his farm in the Moberly area to the new owner in Jefferson City. As Schumann attempted to pull the combine over to the shoulder to allow backed-up traffic to pass him, he experienced a slow sinking feeling in the shoulder of the highway. Schumann lost control of the combine as it pivoted to the right and headed down a steep embankment, picking up speed as it went down the hill.[2] He was flung about the inside of the cab until he was eventually thrown through the cab window and landed at the bottom of the ravine. As a result of the accident, he suffered a broken left forearm, a broken rib, a bruised kidney, and some scratches and bruises.

On June 24, 1991, Schumann filed a petition for personal injuries against the Commission, alleging that the Commission had designed, constructed, and maintained that portion of the shoulder of Highway 63 in a dangerous and defective condition and that the Commission had failed to guard against, adequately warn, or remedy the dangerous condition.[3] On July 3, 1991, the Commission answered, asserting several affirmative defenses, including the $100,000 liability cap pursuant to § 537.610. In response, on Jan-

---

1. All statutory references are to RSMo 1994.

2. The combine's maximum speed was approximately 13 miles per hour. Schumann was travelling at approximately that speed when the accident occurred.

3. The original petition also named Schumann's wife as a party but she was dismissed from the case at trial. Her dismissal is not an issue in this appeal.

uary 19, 1994, Schumann filed an amended petition which added Counts II and III. Count II asked the trial court for a judgment declaring § 537.610 unconstitutional. Count III asked for prejudgment interest pursuant to § 408.040. The Commission filed answers to Count I and III on January 28, 1994, and on Count II on March 1, 1994.

The case was tried to a Randolph County jury in February, 1994.[4] The jury assessed damages in the amount of $191,000, finding the Commission to be 70% at fault and Schumann to be 30% at fault. The court then entered judgment for $133,700 (70% of $191,-000) in favor Schumann.

On March 10, 1994, the Commission filed a motion for judgment notwithstanding the verdict and an alternative motion for new trial. On March 29, 1994, Schumann filed a motion for judgment as a matter of law as to counts II and III. On June 7, 1994, the trial court entered an order and judgment denying both parties' motions. The trial court then amended the judgment to the sum of $100,000 to reflect the statutory cap on damages and assessed costs against the Commission. Both parties appealed and the Attorney General intervened on behalf of the State of Missouri.

## SCHUMANN'S APPEAL

Schumann raises two points on appeal. In his first point, he contends the trial court erred in denying his motion for judgment as a matter of law based on his claim that the $100,000 cap imposed by § 537.610 is unconstitutional because it violates his rights under Mo. Const. art. I, §§ 2, 10 and 14. Specifically, he asserts the $100,000 cap is unconstitutional because it denies him his

rights to "'pursuit of happiness and the enjoyment of the gains of [his] own industry', due process, and access to the courts of justice for 'certain remedies afforded to every injured person.'"[5]

Because Schumann challenges the validity of a statute of this state, we must first determine whether the issue is within the exclusive jurisdiction of the Supreme Court. Mo. Const. art. V, § 3. Schumann, in his Jurisdictional Statement, asserts the Supreme Court has exclusive jurisdiction over this point. However, we are not bound by a party's statement that jurisdiction lies with the Supreme Court or with this court. *State v. Ellis,* 853 S.W.2d 440, 446 (Mo.App.1993).

Article V, § 3 of the Missouri Constitution declares that the Supreme Court has "exclusive appellate jurisdiction in all cases involving the validity ... of a statute ... of this state...." However, the mere assertion that a statute is unconstitutional does not deprive the court of appeals of jurisdiction. The constitutional issue must be real and substantial; not merely colorable. *State v. Ellis,* 853 S.W.2d at 446; *State v. Prowell,* 834 S.W.2d 852, 854 (Mo.App.1992); *State v. Charity,* 637 S.W.2d 319, 321 (Mo. App.1982). In this case, we find Schumann's constitutional issue to have been implicitly, if not expressly, decided by our Supreme Court, and therefore to be merely a colorable assertion of a constitutional impediment.

Both parties and the Attorney General cite *Richardson v. State Highway & Transp. Comm'n,* 863 S.W.2d 876 (Mo. banc 1993), in which the Missouri Supreme Court recently addressed the constitutionality of § 537.610. In *Richardson,* the Court held

---

4. The suit was originally filed in Cole County, but was later transferred to Randolph County pursuant to Schumann's motion for change of venue.

5. Schumann's first point also challenges the validity of § 537.600 regarding sovereign immunity. However, as both the Commission and the Attorney General point out, Schumann did not challenge the validity of that section in either the amended petition or the motion for judgment as a matter of law. These documents challenge the validity of § 537.610 only.

The law is well-settled that a constitutional argument must be raised at the earliest opportunity and a constitutional argument cannot be

considered if it raised for the first time on appeal. *Duncan v. Reorganized School Dist. No. R–1,* 617 S.W.2d 571, 573 (Mo.App.1981). Schumann asserts that because § 537.610 refers to § 537.600 and because they are both part of the sovereign immunity doctrine, his challenge to the validity of § 537.610 automatically includes a challenge to § 537.600. He cites no authority for this notion, but even if that were the case, the Missouri Supreme Court expressly found § 537.600 to withstand constitutional scrutiny in *Winston v. Reorganized School Dist. R–2,* 636 S.W.2d 324 (Mo. banc 1982).

the statute did not violate equal protection rights, due process rights, or the right to trial by jury. *Id.* Schumann, however, relies on Judge Holstein's concurring opinion in that case [6] and asks this court to declare that § 537.610 deprives him of his "natural right to life, liberty, the pursuit of happiness *and the enjoyment of the gains of [his] own industry*" in violation of Mo. Const. art. I, § 2. We are, of course, constitutionally bound to follow the most recent controlling decision of the Missouri Supreme Court. *Godfrey v. Union Elec. Co.,* 874 S.W.2d 504, 505 (Mo.App.1994); Mo. Const. art. V, § 2 (1945). In *Richardson,* the Court held that § 537.610 was constitutional. In doing so, as noted in Judge Holstein's concurring opinion, the majority implicitly found the statute did not touch a fundamental right. Thus, the decision in *Richardson* is dispositive of Schumann's purported constitutional claim. Schumann's first point is denied.

In his second point, Schumann contends the trial court erred in denying, due to the $100,000 limit imposed by § 537.610, prejudgment interest allowable under § 408.040.2. He asserts that the cap imposed by § 537.610 does not abrogate his right to prejudgment interest because § 408.040.2 was enacted after § 537.610 and contained no provision that § 408.040.2 should be limited by any statutory cap on damages.

Section 408.040.2 states:

In tort actions, if a claimant has made a demand for payment of a claim or an offer of settlement of a claim, to the party, parties or their representatives and the amount of the judgment or order exceeds the demand for payment or offer of settlement, prejudgment interest, at [9%], shall be calculated from a date sixty days after the demand or offer was made, or from the date the demand or offer was rejected without counter offer, whichever is earlier. Any such demand or offer shall be made in writing and sent by certified mail and shall be left open for sixty days unless rejected earlier.

Schumann argues that because § 408.040.2 broadly refers to "tort actions," presumably including tort actions pursuant to the waiver of sovereign immunity contained in § 537.600.1(2), and does not specifically preclude prejudgment interest from being assessed against the state, the legislature must have intended to allow prejudgment interest without regard to the limit of § 537.610. *See Citizens Elec. Corp. v. Director of Rev.,* 766 S.W.2d 450, 452 (Mo. banc 1989) (Stating that when the legislature enacts a statute, it is presumed to have acted with knowledge of existing law).

■ Section 537.610.2 states:

The liability of the state and its public entities on claims within the scope of sections 537.600 to 537.650 shall not exceed ... one hundred thousand dollars for any one person in a single accident or occurrence, except for those claims governed by the provisions of the Missouri workers' compensation law, chapter 287, RSMo.

Even if we presume the legislature enacted § 408.040.2 with the knowledge of the waiver of sovereign immunity contained in § 537.600 and the limit imposed by § 537.610, it does not follow that the legislature intended prejudgment interest to be allowed above the $100,000 limit. At most, it indicates that prejudgment interest is allowable in any tort suit, including one against the state under § 537.600. The limit imposed by § 537.610 is on the *liability of the state.* To allow Schumann to recover interest on top of the $100,000 judgment would cause the liability of the state in this case to exceed the $100,000 limit. Therefore, under the circumstances of this case, we conclude that Schumann was not entitled to pre-judgment interest. We need not, and do not, decide whether a plaintiff is entitled to pre-judgment interest against the state in a case where the liability of the state does not exceed $100,000. Schumann's second point is denied.

### THE COMMISSION'S APPEAL

The Commission raises three points in its appeal. In its first point, it contends the

---

**6.** Five members of the Court in *Richardson* joined in the majority opinion holding the sovereign immunity cap to be constitutional, one member concurred in the result, and Judge Holstein concurred in the result with a separate opinion.

trial court erred in overruling its motions for directed verdict and for judgment notwithstanding the verdict because the condition of the shoulder was open and obvious as a matter of law. It further contends the case was not submissible to the jury because Schumann created the risk of harm in failing to exercise due care by operating his combine on the edge of the shoulder and by operating a vehicle of excessive width in violation of § 304.170.

▆ Schumann argued at trial that the shoulder was designed, constructed and maintained in a dangerous and defective condition in that it was soft and crumbly, that the solid portion of the shoulder was two or three feet narrower than the uniform ten foot width, and that the soil supporting the shoulder had slid causing a slope failure in the embankment. The Commission maintains the evidence at trial established that these conditions were open and obvious at the time of Schumann's accident and therefore, the case should not have gone to the jury. "[W]here the danger is open and obvious as a matter of law and the risk of harm exists only if the plaintiff fails to exercise due care, the case is not submissible to the jury." *Harris v. Niehaus*, 857 S.W.2d 222, 227 (Mo. banc 1993). Further, there is no duty to warn against hazards either known or so obvious that a reasonable person would be expected to discover them. *Guthrie v. Reliance Constr. Co.*, 612 S.W.2d 366 (Mo.App. 1980). The Commission asserts that even though it had no duty to warn because the condition was so obvious, the shoulder was in fact marked with two Type 3 object markers.[7]

▆ The trial court did not err in overruling the Commission's post trial motions on the ground that the condition of the shoulder was open and obvious. *Harris v. Niehaus* is distinguishable from the facts in this case. In *Harris v. Niehaus*, a woman left her children in a car on a hill facing down toward the lake at the bottom of the hill. It is obvious to a reasonable person that a car will roll down a hill, and that if there is a lake at the bottom of the hill, the car will likely roll into the lake. Such a condition cannot even be considered a defect in the property: it is a natural condition. A crumbling shoulder edge can hardly be likened to a car parked on a hill. And, although there may have been indications that the shoulder was beginning to deteriorate, the extent of the deterioration, particularly the soil supporting the shoulder, was not open and obvious.

Consequently, the condition of the shoulder was not, as a matter of law, open and obvious. The issue as to Schumann's fault in failing to recognize the danger or heed the warning signs was properly one for the jury. As a matter of fact, the jury assigned 30% of the fault to Schumann. Therefore, the trial court committed no error in refusing to grant the Commission's post-trial motions on the ground that the condition of the shoulder was open and obvious. The point is denied.

In its second point, the Commission asserts the trial court erred in admitting the testimony regarding the economic calculation of Schumann's lost enjoyment of life because lost enjoyment of life is not a proper subject of expert testimony, the evidence was not credible, and there was insufficient foundation for such evidence.

Over the Commission's objection, Schumann called Jack Ward, an economist, to testify on the issue of hedonic damages, an economic calculation of his lost enjoyment of life. Dr. Ward testified that in his opinion, Schumann had suffered damages in the amount of $496,249. He calculated this figure using several federal "willingness-to-pay" studies, consumer behavior studies, and contingent valuation studies, and arrived at a "conservative statistical valuation for human life" of $2.2 million. After deducting earnings capacity and value of services, he deter-

---

7. Type 3 object markers are black and yellow diagonal striped signs used to mark objects close to the edge of the roadway (such as underpass piers, bridge abutments, and handrails) and other roadside conditions (such as narrow shoulder drop-offs, gores, etc.) making it undesirable for a driver to leave the roadway.

Schumann's evidence was that these signs were inappropriate because they signify conditions are safe to the left of the signs. In this case, the signs were on the outside edge of the shoulder, so a person would interpret the signs to mean he could safely drive on the shoulder.

mined the value of lost enjoyment of life at $55,000 per year. Using psychological scales, he then concluded that Schumann had a lost enjoyment of life of 20%–40%. Using 30% lost enjoyment of life projected over Schumann's life expectancy and discounting its present value, Dr. Ward determined Schumann's damages for lost enjoyment of life was $496,249. None of the studies, materials and psychological tables used by Dr. Ward in calculating hedonic damages were offered into evidence.

The Commission does not contest the concept that lost enjoyment of life is a compensable element of general damages in a personal injury case. Rather, it contends the use of an expert witness to calculate these damages is improper.[8] The Commission compares hedonic damages to damages for pain and suffering and argues that they are not susceptible of scientific or economic calculation and are peculiarly within the province of the jury. No Missouri case has specifically addressed the issue regarding expert testimony on hedonic damages.

We need not decide the issue because we find that even if it was error to allow Dr. Ward's testimony,[9] there was no

---

**8.** The parties take different positions as to the applicable test for determining the admissibility of expert testimony.

The traditional test originated in *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923). In *Frye*, the court held that for an expert witness' testimony to be admissible, the testimony must be based on scientific principles that are generally accepted in the relevant scientific community. *Id.* at 1014. Our Supreme Court formally adopted the *Frye* rule for civil suits in *Alsbach v. Bader*, 700 S.W.2d 823 (Mo. banc 1985). Since that time, however, the Missouri General Assembly, in 1989, enacted § 490.065, which provides in pertinent part:

> 1. In any civil action, if scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

Thereafter, the United States Supreme Court decided *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. ——, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). In *Daubert*, the court held that the *Frye* standard for admissibility of expert testimony was too stringent in light of Rule 702 of the Federal Rules of Evidence, which is virtually identical to § 490.065. In evaluating Rule 702 in relation to the *Frye* standard, the Supreme Court noted that neither the Rule nor its drafting history mention *Frye* or "general acceptance" as a prerequisite to admissibility. *Id.*, 509 U.S. at ——, 113 S.Ct. at 2794, 125 L.Ed.2d at 480. The court went on to say that "*Frye* made 'general acceptance' the exclusive test for admitting expert scientific testimony. That austere standard, absent from and incompatible with the Federal Rules of Evidence, should not be applied in federal trials." *Id.* The court then held that a more flexible standard should be used, and concluded: "[G]eneral acceptance" is not a necessary precondition to the admissibility of scientific evidence ..., but the Rules of Evidence—especially Rule 702—do assign to the trial judge the task of ensuring that an expert's testimony both rests upon a reliable foundation and is relevant to the task at hand. Pertinent evidence based on scientifically valid principles will satisfy those demands.
*Id.*, 509 U.S. at ——, 113 S.Ct. at 2799, 125 L.Ed.2d at 485.

The question whether § 490.065 supersedes the *Frye* doctrine in the same fashion that *Daubert* found Rule 702 changes the requirements for admissibility of expert testimony in federal cases has not yet been decided by our Supreme Court. In *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852 (Mo. banc 1993), the court recognized the existence of the issue, but found that under the circumstances of that case, it would be inappropriate to decide the question.

Thus, no Missouri case has yet decided what, if any, impact adoption of § 490.065 has on the application of the *Frye* "general acceptance" rule, much less whether it compels application of the *Daubert* standard.

**9.** While, as indicated, we do not decide whether expert testimony on hedonic damages is admissible, we observe that most jurisdictions addressing the issue have rejected such testimony. In *Sullivan v. U.S. Gypsum Co.*, 862 F.Supp. 317 (D.Kan.1994), the court stated:

> Our decision here, precluding [the expert's] proffered testimony as to hedonic damages, is in accord with the great weight of authority from both federal and state courts which have precluded similar proffered expert testimony. *See Mercado v. Ahmed*, 756 F.Supp. 1097 (N.D.Ill.1991); *Sterner v. Wesley College, Inc.*, 747 F.Supp. 263 (D.Del.1990); *Patch v. Glover*, 248 Ill.App.3d 562, 618 N.E.2d 583, 188 Ill. Dec. 13 (Ill.App. 1 Dist.1993); *Foster v. Trafalgar House Oil & Gas*, 603 So.2d 284 (La.App. 2 Cir.1992); *Southlake Limousine and Coach, Inc. v. Brock*, 578 N.E.2d 677 (Ind.App. 3 Dist. 1991); *Fetzer v. Wood*, 211 Ill.App.3d 70, 569 N.E.2d 1237, 155 Ill.Dec. 626 (Ill.App. 2 Dist. 1991).

*Sullivan*, 862 F.Supp. at 321 n. 5. To the *Sullivan* court's listing, we would add *Hein v. Merck & Co.*, 868 F.Supp. 230 (M.D.Tenn.1994); *Livingston v. United States*, 817 F.Supp. 601 (E.D.N.C.1993); *Wilt v. Buracker*, 191 W.Va. 39,

prejudice to the Commission. As noted previously, Dr. Ward calculated Schumann's lost enjoyment of life damages at $496,249. This figure, of course, was being presented merely as an element of Schumann's general damages resulting from the injuries he sustained. It did not, nor was it intended to, comprise all elements of general damages. Yet the jury found only $191,000 in total damages, of which only 70% was attributable to the Commission, resulting in a net judgment to Schumann of $133,700 (and subsequently amended to the $100,000 cap).

> The real question that must be answered is not whether the admission of [the expert]'s testimony was proper or improper, but whether her testimony prejudiced the appellants. As a general rule, error in the admission of evidence is not grounds for reversal if it does not prejudice the complaining party or adversely affect the jury in reaching its verdict.

*Wailand v. Anheuser Busch Inc.*, 861 S.W.2d 710, 716 (Mo.App.1993). *See also Laing v. American Honda Motor Co.*, 628 So.2d 196, 204 (La.App.1993) (holding that "even if it were error to allow [the expert's] testimony on the issue of the money value of hedonic damages, we find that the record, independent of this testimony, supports the jury's award . . . .").

There is ample evidence in the record, independent of Dr. Ward's calculations, to support the verdict. Schumann incurred medical expenses in excess of $23,000, and will incur substantial medical expenses in the future. He will need to undergo two surgical procedures in the future, one of which is estimated to cost $3,000 to $5,000, based on the present cost of such a procedure. He has two plates in his left arm, is unable to twist at the wrist, and experiences pain, if not at all times, at least very frequently.

Schumann's inability to lift with or use his left arm as he did prior to the accident has substantially impaired his ability to farm. He had previously raised hogs as a major part of his farming operation but had to discontinue the activity because he could no longer do the work. His farm income has diminished and his wife, who prior to the accident had been a full time homemaker, has had to go to work outside the home. For four weeks after Schumann returned home from the hospital, he was unable to do anything for himself. It was necessary for Mrs. Schumann to dress him, bathe him and assist him in the bath room. For approximately one and one-half years, because of kidney pain, he could not drive a tractor or combine, and could hardly ride in a car. In addition, he incurred $2,000 in expenses in having his crop put in and harvested in the year of the accident. This relatively small amount resulted from family members and neighbors doing most of the work without charge.

From the foregoing, it is apparent that there was ample evidence to support the verdict, without regard to Dr. Ward's testimony on hedonic damages. Thus, even if admission of Dr. Ward's testimony was error, it did not materially affect the merits of the action. Rule 84.13(b). Point denied.

In its third point, the Commission contends the trial court erred in admitting the testimony of Bailey Mangus, a local farmer and an acquaintance of Schumann, on his theory regarding the cause of the accident.

Bailey Mangus' testimony was offered to support Schumann's theory that the edge of the shoulder collapsed under the combine's tire. Mangus testified that after he had heard about Schumann's accident, he went to the hospital to "see what shape he was in" and that he told Schumann his theory regarding what had happened. After the court overruled the Commission's objection, Mangus proceeded to tell the jury he had told Schumann at the hospital that in his opinion, the pavement "gave way" out from under Schumann, and that the pavement had been "caving off" for a period of months. The Commission renewed its objection at the end

443 S.E.2d 196 (1993); and *Ayers v. Robinson*, 887 F.Supp. 1049 (N.D.Ill.1995). Most of these cases applied the *Daubert* analysis. Schumann cites *Sherrod v. Berry*, 827 F.2d 195 (7th Cir. 1987), as a case where expert testimony on hedonic damages was approved. However, *Sher*-rod was reversed by the court, *en banc*, on other grounds. 856 F.2d 802 (7th Cir.1988). Moreover, *Mercado* was decided later, and appears to have settled the issue and, in effect, overruled *Sherrod*. We have found no other cases approving this type of testimony.

of Mangus' testimony and moved to strike his opinion testimony. The trial court sustained the objection as to any opinion Mangus gave on direct examination that was properly objected to and overruled the motion with the reservation that it did so without prejudice so the Commission could raise it later in terms of a withdrawal instruction. However, the court never informed the jury as to any stricken testimony and refused the Commission's withdrawal instruction.[10]

The Commission asserts Mangus' testimony was improper because it was a lay opinion offered without proper foundation and was given through repeating his own out-of-court statements, thereby constituting hearsay.

 There is no dispute that Mangus was offering lay testimony rather than expert testimony. The Commission complains, not because Mangus testified as to what he saw regarding the condition of the shoulder, but because he offered a conclusion or opinion regarding the cause of the accident based on the condition he observed in the shoulder. According to the Commission, this conclusion should have been left for the jury.

Generally, witnesses must state facts from which the jurors are to form their opinion, but when a witness has personally observed events, he may testify to his "matter of fact" comprehension of what he has seen in a descriptive manner which is actually a conclusion, opinion or inference, if the inference is common and accords with the ordinary experiences of everyday life.

\* \* \* \* \* \*

The test for allowing such is that when it is impossible or extremely difficult for a witness to convey an accurate and actual meaning, and the nature of the thing described may be more clearly and practically conveyed to the jury by a summary of the witness's impressions, or by comparison with some ordinary object or condition familiar to the court or jury, then the practical administration of justice requires acceptance of the testimony even though it

may be, in a sense, the conclusion of the witness.

*Travelers Indem. Co. v. Woods,* 663 S.W.2d 392, 399 (Mo.App.1983). In the case at bar, while Mangus' testimony did involve a conclusion or opinion regarding the cause of the accident, the basic gist of the testimony was the condition of the shoulder as he saw it. While it may have been improper for Schumann's attorney to elicit the testimony by asking Mangus to retell what he had told Schumann at the hospital regarding his theory of what happened, the thrust of the testimony was in the nature of a "matter of fact" comprehension of what he saw: that the shoulder was crumbling and had been for a period of months. The fact that Mangus took the next step and concluded this was the cause of the accident did not prejudice the Commission. "A reviewing court is not required to reverse a judgment unless an error thus committed materially affected the merits of the action under review." *Pratt v. Cudworth,* 637 S.W.2d 720, 724 (Mo.App. 1982); § 512.160.2. "The admission of cumulative and harmless evidence does not always demand reversal." *State v. Williams,* 602 S.W.2d 209, 213 (Mo.App.1980).

Of course the Commission claims there was prejudice. It claims "it is well-recognized by trial practitioners and psychologists that many jurors tend to make up their minds at an early point in a trial, and then disregard contrary evidence." Other than the initial comment that he had gone to the hospital to tell Schumann his "theory of what happened," Mangus basically testified only to what he saw. The type of conclusion Mangus' made is the type of conclusion made in *Myers v. Morrison,* 822 S.W.2d 906 (Mo.App. 1991), in which a lay witness testified as to whether a particular vehicle had enough room to pass around a pickup truck and avoid a collision. The court in that case held that such testimony would be proper. *See also Kennedy v. Union Elec. Co.,* 216 S.W.2d 756, 761 (Mo. banc 1948) (holding opinion testimony from non-expert farmers that erection of dam caused flooding was not im-

---

**10.** The Commission's proposed withdrawal instruction read:

The opinion of Bailey Mangus as to how the accident happened is withdrawn from the case and you are not to consider such evidence in arriving at your verdict.

proper); *Carter v. Liberty Equip. Co.,* 611 S.W.2d 311, 317 (Mo.App.1980) (holding testimony by non-expert that use of safety chain on trailer prevents accidents of this nature permitted because witness expressed no opinion regarding technical properties of chains, methods of attachment, etc., but was only testifying to the obvious—that a safety chain is an extra precaution to afford a back-up connection). In the context of Mangus' entire testimony, including cross-examination, we determine there was no prejudice to the Commission.

On the issue of hearsay, the general rule is that absent the introduction of impeaching or contradicting evidence, the testimony of a witness' prior extrajudicial statements are inadmissible because such statements are self-serving hearsay when offered to prove the truth of the matters asserted therein. *Williams,* 602 S.W.2d at 213. Again, the manner in which Schumann's attorney elicited the testimony may have been improper. Because the testimony that Mangus had told Schumann at the hospital was offered to prove the matter asserted, that the shoulder was crumbling, it was hearsay. However, the fact that Mangus told Schumann at the hospital that the shoulder was crumbling did not strengthen Mangus' testimony that the shoulder was crumbling. As discussed, *supra,* the Commission was not prejudiced by the form of Mangus' testimony. The Commission's final point is denied.

The judgment of the trial court is affirmed.

All concur.